UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| PRINCETON VALLO | CIVIL ACTION NO. 18-1341 SEC P |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| STEVE PRATOR, ET AL. | MAGISTRATE JUDGE HORNSBY |

### MEMORANDUM RULING

The Plaintiff, Princeton Vallo ("Vallo"), sued the Defendants under 42 U.S.C. § 1983 for alleged civil rights violations that occurred while Vallo was imprisoned at Caddo Correctional Center ("CCC"). Before the Court are three matters: Vallo's appeal of Magistrate Judge Hornsby's order denying appointment of counsel and denying a temporary restraining order [Record Document 47], Vallo's appeal from Magistrate Judge Hornsby's order denying a motion for recusal [Record Document 57], and Magistrate Judge Hornsby's Report and Recommendation ("R&R") in which he recommends granting the Defendants' motion for summary judgment and dismissing all of the Plaintiff's claims in this case [Record Document 60]. For the following reasons, the Magistrate Judge's order denying the appointment of counsel and denying a temporary restraining order is **AFFIRMED**. The Magistrate Judge's order denying the motion for recusal is **AFFIRMED**. The Court **ADOPTS IN PART** and **DECLINES TO ADOPT IN PART** the Magistrate Judge's R&R. The portion of the R&R that recommends the dismissal of the excessive force and deliberate indifference claims stemming from (1) the first use of force on October 16, 2017, (2) the use of force on January 19, 2018, and (3) the use of force on February 4, 2018, is adopted and those claims are dismissed. The Court, however, does not dismiss

1

the excessive force claim arising from the second alleged use of force on October 16, 2017, and that claim shall remain. These matters will be discussed in turn.

1.  <u>Appeal of the Denial of Counsel and Denial of a Temporary Restraining Order</u>

Vallo previously filed a motion with the Magistrate Judge requesting that a temporary restraining order ("TRO") be issued against Bayou Dorcheat Correctional Center, where he was then housed. Record Document 45. At that time, Vallo's concern was that he was being denied the opportunity to visit the law library to conduct legal research on his excessive force and medical care claims against CCC. He also alleged that Bayou Dorcheat denied him postage, paper, and envelopes. The Magistrate Judge denied the TRO, holding that Bayou Dorcheat was not a legal entity capable of being sued, that it was not a party to this litigation but was merely where Vallo was being housed at that time, and that Vallo had failed to demonstrate he was entitled to such extraordinary relief.[1] Record Document 46.

Vallo's motion also requested that counsel be appointed to represent him. Record Document 45. The Magistrate Judge noted that Vallo's excessive force and medical care claims were similar to those routinely presented and litigated by self-represented

---

[1] Magistrate Judge Hornsby had previously denied Vallo's earlier, identical request for a TRO for the same alleged issues, that is, lack of access to the law library, envelopes, postage, and pens. <u>See</u> Record Document 32. The ruling explained that an injunction is not a stand-alone claim, but rather must be a remedy for an existing claim, and that Vallo's request for a TRO did not relate to any of his claims against CCC for excessive force and deliberate indifference to his medical needs. Vallo was advised to pursue administrative remedies, and then if necessary, file a new civil action regarding denial of access to the courts.

prisoners, and thus, did not present extraordinary circumstances warranting appointment of counsel. Record Document 46.

Vallo has appealed the denial of the Magistrate Judge's order. Upon due consideration, the Magistrate Judge's ruling is **AFFIRMED**. Vallo's appeal contains no factual or legal grounds to grant either a TRO or warrant the appointment of counsel. In short, he simply disagrees with the ruling, but has not presented anything to persuade the Court that the ruling is incorrect. Furthermore, the request for a TRO appears to be moot, as Vallo has been released from imprisonment.

2. Appeal of the Denial of Motion for Recusal

Vallo previously filed a motion for Magistrate Judge Hornsby to recuse himself. Record Document 53. That motion was denied. Record Document 55. Thereafter, Vallo filed a motion with this Court requesting that the undersigned recuse Judge Hornsby. Record Document 57, p. 1. The motion is construed as an appeal of Judge Horsnby's denial of the motion to recuse himself.

In general, Vallo takes umbrage with the Magistrate Judge's denial of certain motions he has filed. He theorizes that Sheriff Prator and Magistrate Judge Hornsby have conspired to deny him justice, a theme often repeated throughout his filings. There is no evidence to document this theory, other than Vallo's unsupported inference that a ruling in the Defendants' favor must stem from a conspiratorial and nefarious relationship between the Defendants, the Magistrate Judge, and the defense attorney.

The Court agrees with Magistrate Judge Hornsby's denial of the motion for recusal. 28 U.S.C. § 455(a) states that a judge "shall disqualify himself in any proceeding in which

his impartiality might reasonably be questioned" or where "he has a personal bias or prejudice concerning a party." 28 U.S.C. § 455(a), (b). "While the subsections are similar, § 455(a) regards the general appearance of impartiality, whereas § 455(b)(1) concerns specific cases of conflict of interest and requires a showing of actual personal bias." Matter of Burch, 818 F. App'x 367, 368 (5th Cir. 2020). "A motion for recusal is committed to the discretion of the . . . judge, and the denial of such a motion will only be reversed upon the showing of an abuse of such discretion." United States v. Bremers, 195 F.3d 221, 226 (5th Cir. 1999). A judge abuses his discretion in denying recusal "where a reasonable man, cognizant of the relevant circumstances surrounding [the] judge's failure to recuse, would harbor legitimate doubt about that judge's impartiality." Andrade v. Chojnacki, 338 F.3d 448, 454 (5th Cir. 2003) (internal quotation marks omitted).

Here, Vallo has not shown that the Magistrate Judge's impartiality can reasonably be questioned, nor has he demonstrated that the Magistrate Judge has an actual personal bias against Vallo. That the Magistrate Judge has denied a request for appointment of counsel and denied Vallo's motion for a temporary restraining order fails to establish either bias or impartiality. Thus, the Magistrate Judge's ruling denying the motion for recusal is **AFFIRMED**.

3. The Report and Recommendation

The Defendants filed a motion for summary judgment seeking dismissal of all of Vallo's excessive force and medical care claims. After extensions of time granted by the Magistrate Judge, Vallo opposed the motion but did so without the benefit of certain materials that the Magistrate Judge had ordered to be resent to Vallo. See Record

Document 60, pp. 9-10.  Vallo was granted additional time to supplement his opposition after reviewing those materials, but he failed to file anything else.  Magistrate Judge Hornsby issued his R&R recommending dismissal of Vallo's claims against the Defendants.  Shortly after the expiration of the time period to object, Vallo filed several pleadings within the span of one week:  (1) an untimely response to the Defendants' reply to the motion for summary judgment [Record Document 61], (2) an objection to the R&R [Record Document 63], (3) an untimely opposition to the motion for summary judgment [Record Document 65], and (4) a "rebuttal" of the R&R [Record Document 67].  These four documents are largely duplicative of each other.  Even though two of the documents purportedly respond to the motion for summary judgment and are thus untimely, the Court has reviewed them and finds that they do not raise new arguments or legal theories.  The Defendants have had the opportunity to respond to Vallo's objections to the R&R, but have declined to file a response.

At issue in the R&R are use of force incidents that occurred on three separate dates during Vallo's imprisonment at CCC: October 16, 2017, January 19, 2018, and February 4, 2018.  The R&R found that the Defendants' motion for summary judgment rebutted the allegations in Vallo's complaint and thus shifted the burden to Vallo to demonstrate the existence of genuine disputes of material fact.  Because of Plaintiff's failure to oppose the Defendants' motion with competent summary judgment evidence, the R&R concluded that Vallo's allegations were not supported by admissible evidence.  Upon review of the materials in the record, the Magistrate Judge determined that the Defendants did not use

excessive force in dealing with Vallo nor did they act with deliberate indifference to his medical needs. As such, he recommended dismissal of all of Vallo's claims.

Through his most recent filings, Vallo has attempted to remedy the absence of admissible evidence in his favor. He has submitted his own declaration, signed under penalty of perjury. Record Document 63-1, pp. 1-2. In addition, he provided a picture of his injuries from the October 16, 2017 use of force incident, as well as nurse notes from his infirmary visit that day and a use of force form completed by CCC personnel. Record Document 63-2, pp. 1-2, 4. He also provided nurse notes and a use of force form relating to the use of force event on January 19, 2018. Id. at pp. 5-6. And, finally, Vallo submitted a page of nurse notes which purportedly documents the absence of medical care on February 4, 2018. Id. at p. 3. This now constitutes the evidence before the Court for its consideration in resolving Vallo's objection to the R&R.[2] The Court will consider each of the incidents separately.

    a.    October 16, 2017

With respect to the events on October 16, 2017, the Magistrate Judge found that the Defendants did, in fact, use force, but that under the elements set forth in Hudson v. McMillian, 503 U.S. 1 (1992), such force was not excessive given the circumstances. The recording from CCC cameras contains no audio, however, it:

> [S]hows five officers approach the cell and encounter a large object blocking the window of the cell. An officer opened the door, and the ERT entered, with the first officer using large red pads to clear the way. The officers

---

[2] In addition to disputing the use of force events, Vallo's declaration also challenges the appropriateness of his Level 2 security designation and generally alleges that he is not a violent inmate. CCC's classification of inmates is not an issue before the Court at this time and thus the Court will not address this matter.

> immediately began to grapple with Plaintiff inside the cell. What happened inside the cell is not clearly visible, but officers soon wrestled Plaintiff outside the cell. One of the officers, presumably Morris, picked up a baton from the floor and tossed it to a nearby officer who was not involved in the extraction. The officers threw several punches, with one officer throwing more than a dozen, before Plaintiff's hands could be forced behind his back and handcuffs applied. The punches stopped immediately after the handcuffs were secured. Two officers then each used an arm to hold Plaintiff down on the ground for about two minutes, during which time Plaintiff once attempted to get up. Plaintiff was led away out of camera range.

Record Document 60, p. 8. The Court has reviewed the surveillance footage from the incident that occurred around 12:51 that day and agrees with Magistrate Judge Hornsby's observations of what was captured on the recording.

Analyzing this incident in light of Vallo's allegations, the R&R concludes that:

> The summary judgment record before the court shows that there was a significant use of force, but it was in response to repeated failures to obey orders and be handcuffed. The officers did hit Plaintiff several times after they were required to enter his cell, but they ceased doing so immediately once Plaintiff complied and placed his hands behind his back. The medical records indicate that, despite the force used, Plaintiff was not seriously injured. The x-rays in particular do not support Plaintiff's allegations that he suffered broken ribs or other fractures. The <u>Hudson</u> factors do not support a finding of excessive force under these circumstances. There was a need for the application of force, a reasonable amount of force was applied given Plaintiff's background and the threat he posed to the safety of the officers, and efforts to temper the severity of the response by using a chemical agent were thwarted by Plaintiff blocking his tray hatch. An assessment of these factors indicates that the force was applied in a good-faith effort to maintain or restore discipline, and not maliciously or sadistically to cause harm.
>
> The medical records and other evidence indicate that Plaintiff was afforded prompt and reasonable medical attention after the cell extraction. He was given anti-inflammatory medication, and x-rays were taken to ensure that there were no fractures. These facts do not suggest deliberate indifference to a serious medical need. Plaintiff may have disagreed with the particular treatment he was afforded, but such disagreements do not state a constitutional claim for indifference to medical needs.

Record Document 60, pp. 11-12. The Court agrees with both the analysis and conclusions set forth above, as to both the allegations of excessive force and deliberate indifference to Vallo's medical care. Thus, the R&R is adopted in those respects.

The issue, however, is that Vallo has alleged fairly consistently that there were <u>two</u> uses of force on October 16, not just one. He contends the first, discussed above, began at approximately 12:45. He was then taken to the infirmary, and when he left his infirmary evaluation, he was taken to a cell in men's mental health and again beaten by guards. The Defendants address only the first use of force that day, and do not deny or even address the second alleged event. The R&R addresses only the first use of force that day, and as discussed above, found that it was not excessive. Thus, neither the Defendants' filings nor the R&R addresses Vallo's allegation of a second use of force incident.

As explained below, viewing the evidence in the light most favorable to Vallo and drawing all reasonable inferences in his favor, the Court finds that genuine disputes of material fact exist. Vallo has submitted the nurse notes from October 16, 2017,[3] which he asserts document two separate infirmary visits twenty minutes apart—the first at 1:10 and the second at 1:30.[4] The 1:10 notes, evidently authored by Nurse Cook, appear to relate to the event captured on surveillance; those notes reflect that Vallo displayed red

---

[3] These nurse notes were also submitted in connection with the Defendants' motion for summary judgment.

[4] Because the nurse notes are handwritten and often use shorthand and abbreviations, and because there has been no explanation from the defense, the Court understands there could be an alternative explanation for this evidence that differs from Vallo's theory. However, the defense has remained silent on this allegation and has failed to submit any competing evidence to explain the contents of the nurse notes. The Court cannot make factual determinations or credibility decisions at the summary judgment stage, and thus finds that Vallo has established a genuine issue of material fact.

8

marks and edema to the left side of his face. Record Document 42-3, p. 1. He complained of pain to the left side of his face and the left side of his ribs. Id. The next entry on the nurse notes is possibly from the same day at 1:30, twenty minutes after the first set of notes. That entry states that Vallo was "brought down to medical" and notes that he was "refusing to comply" with the emergency response team. The words "face," "lips," and "lacerations" are visible in the notes.[5] The notes do not contain a signature, but Vallo's declaration states that Nurse Leone authored them, and the Court observes that the handwriting does appear to be different than the 1:10 notes written by Nurse Cook. Aside from the nurse notes, Vallo's sworn statement represents that pictures were taken after the second event but that the Defendants have intentionally failed to produce this evidence.

The Court finds that Vallo has established a genuine issue of material fact that has not been rebutted by the Defendants. That is, he has submitted his sworn declaration attesting that a second event occurred. He has pointed to medical notes that plausibly document a second infirmary visit shortly after the first. The Defendants have remained silent in the face of this evidence. Therefore, summary judgment as to this claim is denied.

To be clear for purposes of the record, the Court agrees with the R&R that the allegations relating to the first use of force claim on October 16, 2017 should be dismissed. The Court, however, finds that there is an allegation of a second incident on that same date, and therefore summary judgment is denied as to the excessive force claim relating to that alleged second incident. Vallo has not established a genuine issue of fact relating

---

[5] Vallo submits that the notes confirm facial and lip lacerations.

to the medical care he received after the second alleged beating, and thus, any claim for deliberate indifference to his medical needs arising from the second alleged incident on October 16, 2017, is dismissed.

  b.  January 19, 2018

Vallo alleged excessive force was used against him on January 19, 2018. The R&R found that the force used on this occasion, including the use of a tazer on Vallo's arm, was not excessive under the circumstances. The Court agrees with the R&R's treatment of this claim. To rebut the Defendants' evidence, the sworn declaration Vallo has submitted states that "Draper claims he tazed me once when in Exhibit 5 nurse documented I was also tazed in the neck too, proving Draper lied in his sworn affidavit . . . ." Record Document 63-1, p. 2. The nurse notes, however, do not state any such thing. Rather, they state, "Scratch noted to [right] upper arm, [left] side of neck. Tazed in [right] upper arm. No other injury noted." Record Document 63-2, p. 5. Vallo cannot create a genuine dispute of material fact by incorrectly claiming that evidence says something it plainly does not say. Accordingly, summary judgment is appropriate for this claim, and the R&R is adopted in this respect.[6]

  c.  February 4, 2018

Vallo complained about the use of excessive force stemming from a February 4, 2018 visiting room incident. After reviewing the video surveillance, the Magistrate Judge concluded that the officers did not use excessive force. Vallo's sworn declaration does not

---

[6] Vallo made no specific claim of deliberate indifference to his medical needs regarding the January 19, 2018 incident.

dispute the facts surrounding the force used to gain his compliance, which is critical. Thus, he has not created an issue of material fact as it relates to the use of force, and summary judgment is therefore appropriate on his excessive force claim.

Vallo, rather, focuses his declaration on the medical care he received that day, or the lack thereof. He points out that the affidavit submitted Reginald Morris ("Morris"), one of CCC's Emergency Response Team members, states that after the February 4 incident, Vallo was "taken to medical and cleared." Record Document 42-4, p. 3. In contrast, Vallo shows that the nurse notes from around that period of time (covering January 29 through February 16) do not reflect an infirmary visit on February 4. Thus, he argues that this absence of evidence proves "all the lies in their sworn affidavits, discrediting their word, showing genuine disputes." Record Document 63-1, p. 2. That is the entirety of Vallo's competing evidence for this incident.

The Court agrees with Vallo that the nurse note he provided from that time period does not document any February 4 visit. However, the mere absence of a nurse note does not discredit Morris's affidavit, especially when Vallo himself concedes that he was taken to the infirmary that day. Indeed, Vallo has stated elsewhere in his pleadings that on February 4, 2018, the nurse "evidently didn't write nothing down in the medical chart, all she gave me was a bandaid, 'disregarding my serious medical needs.'" Record Document 65, p. 6.[7] This admission defeats his allegation that Morris has lied. Vallo cannot both deny an infirmary visit ever occurred yet also complain about the

---

[7] The bandaid is visible in the pictures taken after the incident. Record Document 42-4, p. 7. No other physical injuries are visible.

thoroughness of that visit. Furthermore, his sworn declaration does not address any injuries received from the incident or how the medical attention he received was constitutionally deficient. That is, he has not demonstrated deliberate indifference to a serious medical need. While Vallo may not agree with the medical treatment CCC provided, that disagreement does not rise to the constitutional level of indifference to his medical needs. Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997). Accordingly, summary judgment is appropriate for the February 4, 2018 incident, and the R&R is adopted in that respect.

4. Conclusion

The Magistrate Judge's order denying the appointment of counsel and denying a temporary restraining order is **AFFIRMED**. The Magistrate Judge's order denying recusal is **AFFIRMED**. The Court **ADOPTS IN PART** and **DECLINES TO ADOPT IN PART** the Magistrate Judge's R&R . The portion of the R&R that recommends the dismissal of the excessive force and medical care claims stemming from (1) the first use of force on October 16, 2017, (2) the use of force on January 19, 2018, and (3) the use of force on February 4, 2018, is adopted and those claims are dismissed. The Court does not dismiss the excessive force claim arising from a second alleged use of force event on October 16, 2017; that claim is the only matter left to be litigated in this case.

**THUS DONE AND SIGNED** this 29th day of September, 2020.

ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE